**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **CITY OF BURLINGTON, VERMONT,** | ) | |
| | ) | **MDL NO. 2873** |
| | ) | |
| **Plaintiff,** | ) | **Master Docket No:   2:18-mn-2873-RMG** |
| | ) | |
| | ) | **JUDGE RICHARD GERGEL** |
| **v.** | ) | |
| | ) | **Civil Action No: _____** |
| | ) | |
| **THE 3M COMPANY (f/k/a Minnesota** | ) | **COMPLAINT AND** |
| **Mining and Manufacturing, Co.);** | ) | **JURY DEMAND** |
| **AGC CHEMICALS AMERICAS, INC.;** | ) | |
| **AMEREX CORPORATION;** | ) | |
| **ARCHROMA U.S. INC.; ARKEMA,** | ) | |
| **INC.; BASF CORPORATION;** | ) | |
| **BUCKEYE FIRE EQUIPMENT** | ) | |
| **COMPANY; CHEMDESIGN** | ) | |
| **PRODUCTS, INC.; CHEMGUARD,** | ) | |
| **INC.; CHEMICALS, INC.;** | ) | |
| **CHEMOURS COMPANY FC, LLC;** | ) | |
| **CHEMOURS FC; CLARIANT** | ) | |
| **CORPORATION; CORTEVA, INC.;** | ) | |
| **DAIKIN AMERICA, INC.;** | ) | |
| **DEEPWATER CHEMICALS,** | ) | |
| **INC.; DUPONT DE NEMOURS, INC.** | ) | |
| **(f/k/a DOWDUPONT, INC.); DYNAX** | ) | |
| **CORPORATION; DYNEON LLC;** | ) | |
| **E.I. DUPONT DE NEMOURS AND** | ) | |
| **COMPANY; JOHNSON CONTROLS,** | ) | |
| **INC.; NATION FORD CHEMICAL** | ) | |
| **COMPANY; PERIMETER** | ) | |
| **SOLUTIONS, LP; THE ANSUL** | ) | |
| **COMPANY; THE CHEMOURS** | ) | |
| **COMPANY; TYCO FIRE PRODUCTS** | ) | |
| **LP; WILLIAMS FIRE & HAZARD** | ) | |
| **CONTROL;** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

1

## COMPLAINT

The City of Burlington, Vermont, by and through its undersigned counsel, for its Complaint against Defendants alleges as follows:

1.    The City of Burlington, Vermont ("Plaintiff") is a Vermont municipal corporation and owns the Patrick Leahy Burlington International Airport ("Leahy Airport"). Leahy Airport hosts two military installations, Burlington Air National Guard Base, including the 158th Fighter and the Air Combat Command of the Vermont National Guard, and an Army Aviation Support Facility of the Vermont Army National Guard, including the 1st Battalion, 103rd Aviation Regiment, and the 86th Medical Company (Air Ambulance).

2.    Plaintiff brings this action in its sovereign capacity against Defendants, jointly and severally, to recover compensatory, consequential and punitive damages for the investigation, monitoring, remediation, removal, disposal and economic costs related to the wanton continuing trespass, nuisance, negligence, fraudulent concealment, breach of warranty and strict liability for environmental and economic injuries contamination and unlawful incursion onto the Plaintiff's property, land, surface, surface water, groundwater, surface and subsurface soil, sediment, natural resources caused by Defendants' fluorinated Class-B firefighting foams, known as Aqueous Film Forming Foams products and/or component products, manufactured with synthetic per- and polyfluoroalkyl substances.

3.    In this complaint, the term Aqueous Film-Forming Foam ("AFFF") refers to any fluorinated firefighting foams that contains Perfluorooctanesulfonic acid ("PFOS") and/or Perfluorooctanoic acid ("PFOA") (including any of their salt, ionic or acid forms and their precursors or degradation products) manufactured, sold or distributed by the Defendants for civilian, military and training applications worldwide.

4.     In this complaint, the term per- and polyfluoroalkyl substances ("PFAS") refers to a family of synthetic man-made chemicals and surfactants including but not limited to:  PFOA, PFOS, Perfluorohexanoic acid ("PFHxA"), Perfluoropentanoic acid ("PFPA"), Perfluoroheptanoic acid ("PFHpA"), Pentafluorobenzoic acid ("PFBA"), Perfluorobutanesulfonic acid ("PFBS"), Perfluorononanoic acid ("PFNA"), Perfluorodecacanoic acid ("PFDA") and Perfluorohexane Sulfonic Acid ("PFHS").

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332, insofar as the parties are completely diverse and the amount-in-controversy exceeds $75,000, excluding interest and cost.

6.     Venue is proper in this District Court pursuant to this Court's Case Management Order ("CMO") No. 3.  Plaintiff states that but for the CMO permitting direct filing in the United States District Court for the District of South Carolina, Plaintiff would have filed this Complaint in the United States District Court for the District of Vermont pursuant to 28 U.S.C. § 1391, as Plaintiff is a corporate citizen of the District of Vermont, a substantial part of the events or omissions giving rise to the claim occurred, and the Defendants conduct business within the District of Vermont.  In accordance with CMO No. 3, Plaintiff designates the United States District Court for the District of Vermont as the home venue.

## PARTIES

7.     Both Plaintiff, a municipal corporation organized and existing under Vermont law, and its property, the Leahy Airport, are located in Burlington, Vermont.  Plaintiff owns the land upon which the Leahy Airport operates and has overall administrative, development, and operational responsibility for the Leahy Airport.  The City brings this action on behalf of itself

and in its sovereign capacity, as a trustee, for the benefit of its citizenry and natural resources. The City brings this action to protect its own property, economic and environmental interests and to protect the health, safety and welfare of its citizenry.

8.      Defendants are designers, marketers, developers, manufacturers, distributors, releasers, instructors, promotors and sellers of PFAS-containing AFFF products or underlying PFAS containing chemicals used in AFFF production.  The Defendants, at all times relevant to this lawsuit, manufactured, designed, marketed, distributed, released, instructed, promoted and/or otherwise sold (directly or indirectly) PFAS-containing AFFF products to various locations for use in fighting Class B fires such that each Defendant knew or should have known said products would be delivered to areas for active use by Plaintiff during the course of training and firefighting activities.

9.      Defendant, 3M Company, f/k/a Minnesota Mining and Manufacturing Company, ("3M"), is a Delaware corporation and does business throughout the United States. 3M has its principal place of business at 3M Center, St. Paul, Minnesota 55133.  3M began producing PFOS and PFOA by electrochemical fluorination in the 1940s.  In the 1960s, 3M used its fluorination process to develop AFFF.  3M manufactured, marketed, and sold AFFF from the 1960s to the early 2000s.  In 2000, 3M announced it was phasing out its manufacture of PFOS, PFOA, and related products, including AFFF. 3M, in its press release announcing the phase out, stated "our products are safe," and that 3M's decision was "based on [its] principles of responsible environment management."  3M further stated that "the presence of these materials at very low levels does not pose a human health or environmental risk."  In communications with the EPA at that time, 3M also stated that it had "concluded that…other business opportunities were more deserving of the company's energies and attention…"

4

10. 3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, 3M designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting. Following 3M's exit from the AFFF market, the remaining Defendants continued to manufacture and sell AFFF containing PFAS and/or its precursors.

11. Defendant AGC Chemicals Americas, Inc. ("ACG") is a Delaware corporation and does business throughout the United States. ACG has its principal place of business at 55 E. Uwchlan Ave., Suite 201, Exton, Pennsylvania 19341.

12. AGC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

13. Defendant Amerex Corporation ("Amerex") is an Alabama corporation and does business throughout the United States. Amerex has its principal place of business at 7595 Gadsden Highway, Trussville, Alabama 35173.

14. Amerex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or

used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

15. Defendant Archroma U.S. Inc. ("Archroma") is a North Carolina company and does business throughout the United States. Archroma has its principal place of business at 5435 77 Center Drive, #10 Charlotte, North Carolina 28217. Upon information and belief, Archroma was formed in 2013 as part of the acquisition of Clariant Corporation's Textile Chemicals, Paper Specialties and Emulsions business by SK Capital Partners.

16. Archroma designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

17. Defendant Arkema, Inc. ("Arkema") is a Pennsylvania corporation and does business throughout the United States. Arkema has its principal place of business at 900 1st Avenue, King of Prussia, Pennsylvania 19406. Upon information and belief, assets of Arkema's fluorochemical business were purchased by Defendant Dupont in 2002.

18. Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or

used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

19.     Defendant BASF Corporation ("BASF") is a Delaware corporation and does business throughout the United States. BASF has its principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932.

20.     BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint.  Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

21.     Defendant Buckeye Fire Equipment Company ("Buckeye") is an Ohio corporation and does business throughout the United States. Buckeye has its principal place of business at 110 Kings Road, Mountain, North Carolina 28086.

22.     Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or

otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

23.     Defendant ChemDesign Products, Inc. ("ChemDesign") is a Texas corporation and does business throughout the United States. ChemDesign has its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143.

24.     ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

25.     Defendant Chemguard, Inc. ("Chemguard") is a Wisconsin corporation and does business throughout the United States.  Chemguard has its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

26.     Beginning in the 1990s, Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

27.     Defendant Chemicals, Inc. ("Chemicals") is a Texas corporation and does business throughout the United States. Chemicals has its principal place of business at 12321 Hatcherville Road, Baytown, Texas 77521.

28.     Chemicals designed, marketed, developed, manufactured, distributed, released, trained us4ers, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

29.     Defendant Chemours Company FC, LLC ("Chemours FC"), is a Delaware corporation and does business throughout the United States.  Chemours has its principal place of business at 1007 Market Street, Wilmington, Delaware 19899.  Chemours FC is a subsidiary of The Chemours Company.

30.     Chemours FC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

31.     Defendant Clariant Corporation ("Clariant") is a New York corporation and does business throughout the United States. Clariant has its principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.

32.     Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint.  Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

33.     Defendant Corteva, Inc. is a Delaware Corporation doing business throughout the United States.  Its principal place of business is Chestnut Run Plaza 735, Wilmington, Delaware 19805.  It is successor-in-interest to Dupont Chemical Solutions Enterprise.

34.     Corteva designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

35.     Defendant Daikin America, Inc. is a Delaware corporation and does business throughout the United States.  Its principal place of business is in Orangeburg, New York.

36.     Daikin designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted,

10

sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

37.     Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation and does business throughout the United States.  Deepwater's principal place of business is at 196122 E County Road 735, Woodward, Oklahoma 73801.

38.     Deepwater designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

39.     Defendant Du Pont de Nemours Inc. (f/k/a DowDuPont, Inc.) ("DowDuPont"), is a Delaware corporation doing business throughout the United States. DowDuPont's principal place of business is at 1007 Market Street, Wilmington, Delaware 19899 and 2211 H.H. Dow Way, Midland, Michigan 48674. DowDupont was created in 2015 to transfer Chemours and DuPont liabilities for manufacturing and distributing flurosurfactants to AFFF manufacturers.

40.     DowDuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

41.     Defendant Dynax Corporation ("Dynax") is a New York corporation that conducts business throughout the United States. Its principal place of business is 103 Fairview Park Drive, Elmsford, New York, 10523-1544.

42.     Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

43.     Defendant Dyneon LLC is a unit of 3M with its principal place of business at 6744 33rd Street in Oakdale, Minnesota, 55218.

44.     Upon information and belief, Dyneon LLC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used AFFF containing PFAS used in firefighting training and response exercises which are the subject of this Complaint.  Further, defendant Dyneon LLC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

45.     Defendant E. I. du Pont de Nemours and Company ("DuPont"), is a Delaware corporation and does business throughout the United States. DuPont has its principal place of business at 1007 Market Street, Wilmington, Delaware 19898.

46.     DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF

12

containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

47. Defendant Johnson Controls, Inc. ("Johnson Controls") is a Wisconsin corporation and does business throughout the United States. Johnson Controls has its principal place of business in Milwaukee, Wisconsin.

48. Johnson Controls designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

49. Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina company and does business throughout the United States. Nation Ford has its principal place of business at 2300 Banks Street, Fort Mill, South Carolina 29715.

50. Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

51.    Defendant Perimeter Solutions, LP ("Perimeter") is a Delaware corporation and does business throughout the United States.  Perimeter has its principal place of business in Rancho Cucamonga, California.

52.    Perimeter designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

53.    Defendant The Ansul Company ("Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143. Ansul does and/or has done business throughout the United States, including conducting business in Florida. This Defendant manufactured and sold AFFF that contained PFOA.

54.    Beginning many decades ago, Ansul designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

55.    Defendant the Chemours Company ("Chemours"), is a Delaware corporation and does business throughout the United States. Chemours has its principal place of business 1007

Market Street, Wilmington, Delaware 19898. Upon information and belief, Chemours was spun off from DuPont in 2015 to assume PFAS related liabilities.

56.     Chemours designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

57.     Defendant Tyco Fire Products, LP, as successor-in-interest to The Ansul Company ("Tyco"), is a Delaware limited partnership and does business throughout the United States. Tyco has its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19466. Tyco manufactured and currently manufactures the Ansul brand of products, including Ansul brand AFFF containing PFAS.

58.     Tyco is the successor in interest to the corporation formerly known as The Ansul Company ("Ansul"). At all times relevant, Tyco/Ansul designed, marketed, developed, manufactured, distributed released, trained users, produced instructional materials, sold and/or otherwise handled and/or used AFFF containing PFAS that are used in firefighting training and response exercises which are the subject of this Complaint. Further, defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

59.     Defendant Williams Fire & Hazard Controls ("Williams"), upon information and belief, is a Texas corporation with its principal place of business at 9605 Richard Wycoff Dr, Port

Arthur, Texas 77640. Upon information and belief, Williams is a subsidiary of Chemguard. Williams does and/or has done business throughout the United States, including conducting business in Florida. This Defendant manufactured and sold AFFF that contained PFOA.

60.     Williams designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, sold, and/or otherwise handled and/or used AFFF containing PFAS that are the subject of this Complaint. Further, defendant designed, marketed, developed manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

61.     When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment or agency.

62.     The term "Defendant" or "Defendants" refers to all Defendants named in this Complaint jointly and severally, unless otherwise stated.

## FACTUAL ALLEGATIONS

### Nature and Properties of AFFF and PFAS

63.     AFFF is a water-based, specialized manufactured foam first developed in the 1960s and designed to extinguish flammable liquid fuel and petroleum-based fires at airports, among other places.

64.    AFFF is a Class-B firefighting foam mixed with water and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

65.    AFFF-containing fluorinated surfactants have better firefighting capabilities than water due to their surfactant-tension lowering properties which allow the compound(s) to extinguish fire by smothering, ultimately starving it of oxygen.

66.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary firefighting foam in the United States and in other parts of the world.  It contains PFAS, which are highly fluorinated synthetic chemical compounds whose family include PFOS and PFOA.

67.    Defendants' AFFF contained PFAS, specifically, PFOA, PFOS, perfluoro-nonanoic acid ("PFNA"), perfluorohexanesulfonic acid ("PFHxS") and/or precursors of PFAS.

68.    PFAS are a family of chemical compounds containing fluorine and carbon atoms. They are composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group.  The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is why these molecules are so persistent and bioaccumulate.

69.    PFAS have been used for decades in the manufacture of AFFF.  The PFAS family of chemicals are entirely human-made and do not naturally occur or otherwise exist.

70.    PFAS are microscopic, laboratory-created, manufactured compounds that are toxic to human, mammalian, aquatic, cellular, and biological life, ecologically dangerous, bio-persistent, bio-accumulative, bio-available with half-lives long enough to earn PFAS the description of "forever chemicals."

71.    PFAS are highly water soluble, readily transported through the air as well as the soil, surface water and groundwater, persistent in the environment and resistant to biologic, environmental, or photochemical degradation.  Because these compounds are water soluble and do not readily adsorb to sediments or soil, they tend to stay in the water column and can be transported long distances.

72.    PFAS are thermally, chemically, and biologically stable in the environment and resistant to biodegradation, atmospheric photo-oxidation, direct photolysis, and hydrolysis. They are difficult and costly to remove from soil and water.

73.    Once PFAS are free in the environment, they do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and they are extremely persistent in the environment. As a result of their persistence, they are widely distributed throughout soil, air, and groundwater.

74.    PFAS are ubiquitous in the environment, do not biodegrade, move readily through soil and groundwater, posing a significant hazard and risk to human health and safety and to the environment at large.  The fate and transport of PFAS, once they are in any environmental media, is unknown and uncontrollable.

75.    PFAS are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver. They have been found globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.[1] Prior to commercial development and large-scale manufacture and use of AFFF containing PFAS, no such PFAS had been found or detected in human blood.

---

[1]  Agency for Toxic Substances and Disease Registry, "Per- and Polyfluoroalkyl Substances and Your Health."

76.     PFOS and PFOA are synthetic fluorinated compounds that are particularly useful for controlling and extinguishing aviation, marine, fuel, and other Class B fires because fluorine atoms have extremely persistent and stable physio-chemical properties.

77.     PFOS and PFOA are soluble in water, not easily biodegradable, and persistent in the environment. Both are known to be harmful to human health. When AFFF containing PFOS or PFOA is released into the environment; both compounds, their precursors and degradation products, can migrate into soil and groundwater. It has been shown that the bioconcentration and bioaccumulation of perfluorinated acids is directly related to fluorination.[2]

78.     PFOA and PFOS are extremely toxic, not easily biodegradable, persistent in the environment and pose a significant risk to animal and human health.

79.     Defendants for many years knew or should have known of the systemic toxicity of the compounds and chemicals in their AFFF products.  Instead of addressing or disclosing the systemic toxicity of their AFFF products openly and candidly with the public, as well as the bioavailability, bio-persistence, and the ecological disaster said AFFF products posed to all environmental media, Defendants conspired to minimize known dangers, hazards, toxic effects, and systemic toxicity of their AFFF products.

**AFFF and PFAS' Use in Fighting Airport Fires**

80.     AFFF has been used for decades by military and civilian firefighters to extinguish fires in training exercises and live-fire responses.  AFFF is typically sprayed directly onto a fire, where it then works by coating the ignited fuel source, preventing its contact with oxygen, and suppressing combustion.

---

[2]   Conder, J. M.; Hoke, R.A.; Wolf, W.D.; Russell, M.H.; Buck, R.C. Are PFCAs Bioaccumulative? A Critical Review and Comparison with Regulatory Criteria and Persistent Lipophilic Compounds. *Environ. Sci. Technol*. 2009, 42, 995-1003.

81.     Airports and military bases operated by the United States Air Force, the United States Army and other branches of the military or municipal fire authorities have used fixed extinguishing systems and fluorinated AFFF foams containing PFOA and PFOS for decades. Municipal fire departments likewise use the AFFF foams on a regular and continual basis for training exercises and extinguishing certain fires.

82.     The Federal Aviation Administration (FAA) has required and currently requires the use of AFFF at the Leahy Airport as part of its emergency response to control and extinguish flammable liquid fires, including jet-fuel fires, aviation-related fires, and hangar fires. The FAA further requires testing and training concerning the use of AFFF in emergency situations.

83.     Fire departments have provided fire protection and response at the Leahy Airport and surrounding areas for decades. Fire departments have used AFFF containing PFOS and PFOA in fire suppression and training activities for many years.

84.     Potential release sites including fire training areas ("FTA's") and non-fire training areas where AFFF has been regularly used, stored, transported, and directly or indirectly discharged into the environment. In this case, the Defendants have distributed, manufactured and sold fluorinated AFFF foams to municipal fire authorities, including but not limited to the Leahy Airport, a release point where AFFF has been regularly used, stored, transported, and directly or indirectly discharged into the environment.

85.     Defendants knew or should have known that airports and military operations at airports were heavy users of AFFF, and as such, with said uses of AFFF resulting in pollution of environmental media with AFFFs and the component compounds, chemicals, and toxins of AFFFs. Plaintiff seeks monetary damages under various causes of action against Defendants.

86.     As the location where these AFFF products were used, the Leahy Airport did not have the knowledge held by the Defendants of the AFFF products.

87.     Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting, that were used by entities around the country, including military, county, and municipal firefighting departments.

88.     Defendants have each designed, marketed, developed, manufactured, distributed, released, trained users on, produced instructional materials for, sold, and/or otherwise handled and/or used AFFF containing PFAS, in such a way as to cause environmental and economic injuries, contamination and unlawful incursion onto the Plaintiff's land, surface and subsurface soil, sediment, natural resources, and municipal real property.

**Defendants Knew of, and Actively Concealed, AFFF and PFAS' Dangers**

89.     Defendants for many years knew or should have known of the systemic toxicity of the compounds and chemicals in their AFFF products.  Instead of addressing or disclosing the systemic toxicity of their AFFF products openly and candidly with the public, as well as the bioavailability, bio-persistence, and the ecological disaster said AFFF products posed to all environmental media, Defendants conspired to minimize known dangers, hazards, toxic effects, and systemic toxicity of their AFFF products.

90.     Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFF with knowledge that it contained highly

toxic and bio persistent PFASs, which would expose end users of the product to the risks associated with PFAS.

91.     Defendants designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

92.     AFFF and its components are associated with a wide variety of adverse health effects in humans.

93.     PFAS are persistent in the human body and resistant to metabolic degradation. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.[2]

94.     The United States Environmental Protection Agency ("USEPA") has issued interim Health Advisory Values for PFOA found in drinking water of 0.004 parts per trillion ("ppt"), and for PFOS found in drinking water of 0.02 ppt, as well as final health advisories for GenX chemicals found in drinking water of 10 ppt, and for PFBS found in drinking water of 2000 ppt.[3]

95.     The EPA has noted that "drinking water can be an additional source [of PFOA/PFOS in the body] in the small percentage of communities where these chemicals have contaminated water supplies." In communities with contaminated water supplies, "such contamination is typically localized and associated with a specific facility, for example [...] an airfield at which [PFOA/PFOS] were used for firefighting."[4]

---

[3]  "Drinking Water Health Advisory for Perfluorooctanoic Acid (PFOA)", EPA Doc. No. 822-R-16-005 (May 2016); "Drinking Water Health Advisory for Perfluorooctane Sulfonate (PFOS)", EPA Doc. No. 822-R-16-004.
[4]  *See* "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Document Number:

96.     According to the USEPA, ". . . studies indicate that exposure of PFOA and PFOS over certain levels may result in...developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes)."[5]

97.     The USEPA has also warned that there is evidence of the carcinogenic potential for PFOA and PFOS in humans.[6]

98.     Exposure to Defendants' AFFF has been linked to serious medical conditions including, but not limited to, kidney cancer, testicular cancer, liver cancer, testicular tumors, pancreatic cancer, prostate cancer, leukemia, lymphoma, bladder cancer, thyroid disease, and infertility.

99.     On information and belief, Defendants knew, or reasonably should have known, among other things, that: (a) PFOS, PFOA, PFNA and/or PFHxS are toxic and bioaccumulate in humans and animals; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOS, PFOA, PFNA and/or PFHxS migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.  In addition, PFOS, PFOA, PFNA and/or PFHxS are considered surface water body pollutants/contaminants.

---

800-F-16-003, available at https://www.epa.gov/ground-water-and-drinking-water/supporting-documents-drinking-water-healthadvisories-pfoa-and-pfos.
[5] "Fact Sheet PFOA & PFOS Drinking Water Health Advisories," EPA Doc. No. 800-F-16-003.
[6] "Health Effects Support Document for Perfluorooctane Sulfonate (PFOS)" U.S. Environmental Protection Agency Office of Water Health and Ecological Criteria Division, EPA Doc. No. 822-R-16-002.

100.    At all times pertinent herein, Defendants also knew or should have known that PFOS, PFOA, PFNA and/or PFHxS present a risk to human health and could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOS, PFOA, PFNA and/or PFHxS are known carcinogens that cause genetic damage.

101.    By at least the end of the 1960s, animal toxicity testing performed by Defendants manufacturing and/or using PFAS indicated that exposure to such materials, including at least PFOA, resulted in various adverse health effects among multiple species of laboratory animals, including toxic effects to the liver, testes, adrenals, and other organs and bodily systems.

102.    By at least the end of the 1960s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that such materials, including at least PFOA, because of their unique chemical structure, were resistant to environmental degradation and would persist in the environment essentially unaltered if allowed to enter the environment.

103.    By at least the end of the 1970s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that one or more such materials, including at least PFOA and PFOS, because of their unique chemical structure, would bind to proteins in the blood of animals and humans exposed to such materials where such materials would remain and persist over long periods of time and would accumulate in the blood/body of the exposed individuals with each additional exposure.

104.    By the early 1980s, the industry suspected a correlation between PFOS exposure and human health effects. Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

105.    By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS indicated that at least one such PFAS, PFOA, had caused Leydig cell (testicular) tumors in a chronic cancer study in rats, resulting in at least one such Defendant, DuPont, classifying such PFAS internally as a confirmed animal carcinogen and possible human carcinogen.

106.    It was understood by Defendants by at least the end of the 1980s that a chemical that caused cancer in animal studies must be presumed to present a cancer risk to humans unless the precise mechanism of action by which the tumors were caused was known and would not occur in humans.

107.    By at least the end of the 1980s, scientists had not determined the precise mechanism of action by which any PFAS caused tumors. Therefore, scientific principles of carcinogenesis classification mandated Defendants presume any such PFAS material that caused tumors in animal studies could present a potential cancer risk to exposed humans.

108.    By at least the end of the 1980s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least DuPont, indicated that elevated incidence of certain cancers and other adverse health effects, including elevated liver enzymes and birth defects, had been observed among workers exposed to such materials, including at least PFOA, but such data was not published, provided to governmental entities as required by law, or otherwise publicly disclosed at the time.

109.    By at least the end of the 1980s, Defendants, including at least 3M and DuPont, understood that, not only did PFAS, including at least PFOA and PFOS, get into and persist and accumulate in the human blood and in the human body, but that once in the human body and blood, particularly the longer-chain PFAS, such as PFOS and PFOA, had a long half-life.

Meaning that it would take a very long time before even half of the material would start to be eliminated, which allowed increasing levels of the chemicals to build up and accumulate in the blood and/or body of exposed individuals over time, particularly if any level of exposure continued.

110.    By at least the end of the 1990s, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, indicated that at least one such PFAS, PFOA, had caused a triad of tumors (Leydig cell (testicular), liver, and pancreatic) in a second chronic cancer study in rats.

111.    By at least the end of the 1990s, the precise mechanism(s) of action by which any PFAS caused each of the tumors found in animal studies had still not been identified, mandating that Defendants continue to presume that any such PFAS that caused such tumors in animal studies could present a potential cancer risk to exposed humans.

112.    By at least 2010, additional research and testing performed by Defendants manufacturing and/or using PFAS, including at least 3M and DuPont, revealed multiple potential adverse health impacts among workers exposed to such PFAS, including at least PFOA, such as increased cancer incidence, hormone changes, lipid changes, and thyroid and liver impacts.

113.    When the USEPA and other state and local public health agencies and officials first began learning of PFAS exposure in the United States and potential associated adverse health effects, Defendants repeatedly assured and represented to such entities and the public that such exposure presented no risk of harm and were of no significance.

114.    After the USEPA and other entities began asking Defendants to stop manufacturing and/or using certain PFAS, Defendants began manufacturing and/or using and/or

began making and/or using more of certain other and/or "new" PFAS, including PFAS materials with six or fewer carbons, such as GenX (collectively "Short-Chain PFAS").

115.   Defendants manufacturing and/or using Short-Chain PFAS, including at least DuPont and 3M, are aware that one or more such Short-Chain PFAS materials also have been found in human blood.

116.   By at least the mid-2010s, Defendants, including at least DuPont and Chemours, were aware that at least one Short-Chain PFAS had been found to cause the same triad of tumors (Leydig (testicular), liver, and pancreatic) in a chronic rat cancer study as had been found in a chronic rat cancer study with a non-Short-Chain PFAS.

117.   Nevertheless, Defendants repeatedly assured and represented to governmental entities and the public (and continue to do so) that the presence of PFAS, including Short-Chain PFAS, in human blood at the levels found within the United States present no risk of harm and is of no legal, toxicological, or medical significance of any kind.

118.   Defendants manufactured, marketed, and/or sold AFFF with the knowledge that PFAS would be released into the environment during foreseeable use of the AFFF products in fire protection, associated training, and response activities even when the AFFF was used as directed and intended by the manufacturer.  Tyco, in particular, was in a particular position to know the extent of PFAS fate and transport and environmental media pollution due in part to its experiences with its own manufacturing facilities and fire-training center in or near Marinette, Wisconsin, including its knowledge of PFAS migration from within the boundaries of its property there into the aquifer, the soils, the air, and neighborhoods.

119.   Even after an independent science panel, known as the "C8 Science Panel," publicly announced in the 2010s that human exposure to 0.05 parts per billion or more of one

PFAS, PFOA, had "probable links" with certain human diseases, including kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, preeclampsia, and medically-diagnosed high cholesterol, Defendants repeatedly assured and represented to governmental entities, their customers, and the public (and continue to do so) that the presence of PFAS in human blood at the levels found within the United States presents no risk of harm and is of no legal, toxicological, or medical significance of any kind, and have represented to and assured such governmental entities, their customers, and the public (and continue to do so) that the work of the independent C8 Science Panel was inadequate.

120.    At all relevant times, Defendants, individually and/or collectively, possessed the resources and ability but have intentionally, purposefully, recklessly, and/or negligently chosen not to fund or sponsor any study, investigation, testing, and/or other research of any kind of the nature that  Defendants claim is necessary to confirm and/or prove that the presence of any one and/or combination of PFAS in human blood causes any disease and/or adverse health impact of any kind in humans, presents any risk of harm to humans, and/or is of any legal, toxicological, or medical significance to humans, according to standards Defendants deem acceptable.

121.    At all relevant times, Defendants shared and/or should have shared among themselves all relevant information relating to the presence, biopersistence, and bioaccumulation of PFAS in human blood and associated toxicological, epidemiological, and/or other adverse effects and/or risks.

122.    As of the present date, blood serum testing and analysis by Defendants, independent scientific researchers, and/or government entities has confirmed that PFAS materials are clinically demonstrably present in approximately 99% of the current population of the United States.

123.     There is no naturally occurring "background," normal, and/or acceptable level or rate of any PFAS in human blood, as all PFAS detected and/or present in human blood is present and/or detectable in such blood as a direct and proximate result of the acts and/or omissions of Defendants.

124.     At all relevant times, Defendants, through their acts and/or omissions, controlled, minimized, trivialized, manipulated, and/or otherwise influenced the information that was published in peer-review journals, released by any governmental entity, and/or otherwise made available to the public relating to PFAS in human blood and any alleged adverse impacts and/or risks associated therewith, effectively preventing Plaintiff from discovering the existence and extent of any injuries/harm as alleged herein.

125.     At all relevant times, Defendants, through their acts and/or omissions, took steps to attack, challenge, discredit, and/or otherwise undermine any scientific studies, findings, statements, and/or other information that proposed, alleged, suggested, or even implied any potential adverse health effects or risks and/or any other fact of any legal, toxicological, or medical significance associated with the presence of PFAS in human blood.

126.     At all relevant times, Defendants, through their acts and/or omissions, concealed and/or withheld information from their customers, governmental entities, and the public that would have properly and fully alerted Plaintiff to the legal, toxicological, medical, or other significance and/or risk from having any PFAS material in Plaintiff's blood.

127.     At all relevant times, Defendants encouraged the continued and even further increased use of PFAS by their customers and others, including but not limited to the manufacture, use, and release, of AFFF containing PFAS and/or emergency responder protection gear or equipment coated with materials made with or containing PFAS, and tried to encourage

29

and foster the increased and further use of PFAS in connection with as many products/uses/and applications as possible, despite knowledge of the toxicity, persistence, and bioaccumulation concerns associated with such activities.

128.    To this day, Defendants deny that the presence of any PFAS in human blood, at any level, is an injury or presents any harm or risk of harm of any kind, or is otherwise of any legal, toxicological, or medical significance.

129.    To this day, Defendants deny any scientific study, research, testing or other work has been performed that is sufficient to suggest to the public the presence of any PFAS material in human blood, at any level, is of any legal, toxicological, medical or other significance.

130.    Defendants, to this day, affirmatively assert and represent to governmental entities, their customers, and the public that there is no evidence that any of the PFAS found in human blood across the United States causes any health impacts or is sufficient to generate an increased risk of future disease sufficient to warrant diagnostic medical testing, often referring to existing studies or data as including too few participants or too few cases or incidents of disease to draw any scientifically credible or statistically significant conclusions.

131.    Defendants have known of the health hazards associated with AFFF and/or its compounds for decades and that in their intended and/or common use would cause environmental contamination.

132.    Information regarding AFFF and its compounds were readily accessible to each of the above-referenced Defendants for decades because each is an expert in the field of AFFF manufacturing and/or the materials needed to manufacture AFFF, and each has detailed information and understanding about the chemical compounds that form AFFF products.

133.    The AFFF Defendants through their manufacturing, distribution and/or sale of AFFF, and through their involvement and/or participation in the creation of training and instructional materials and activities, knew, foresaw, and/or should have known and/or foreseen that the Plaintiff and those similarly situated would be harmed.

134.    Defendants had and breached their duty to evaluate and test such products adequately and thoroughly to determine their environmental fate and transport characteristics and potential human health and environmental impacts before they sold such products. They also had and breached their duty to minimize the environmental harm caused by PFAS.  Moreover, defendants failed to warn Plaintiff of the known risks for environmental and health hazards arising from using AFFF with PFAS in its intended manner for its intended purpose.

**Defendants' Failure to Warn**

135.    The AFFF Defendants' products were unreasonably dangerous and the Defendants failed to warn of this danger.

136.    Notwithstanding their respective knowledge of the dangers of AFFF made with PFAS, Defendants negligently and carelessly: (1) designed, manufactured, marketed, and/or sold AFFF containing PFAS; (2) issued instructions on how AFFF should be used and disposed of (namely, by washing the foam into the soil), thus improperly permitting PFAS to contaminate the soil and groundwater in and around the Leahy Airport; (3) failed to recall and/or warn users of AFFF, negligently designed products containing or degrading into PFOA and/or PFOS, of the dangers of soil and groundwater contamination as a result of the standard use and disposal of these products; and, (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of AFFF containing PFAS, notwithstanding the fact that Defendants knew the identity of the purchasers of the AFFF containing PFAS.

137.    The Defendants failed to warn individuals, communities, municipalities, or states of the serious environmental, human, and animal toxicity concerns linked to the use and exposure to fluorinated AFFF foams.

138.    Defendants did not warn that AFFF would cause public entities or others to incur substantial costs to investigate and clean up contamination of groundwater and other natural resources to dispose of AFFF.

139.    The Defendants sold, manufactured, and distributed AFFF containing fluorinated surfactants touting the superior firefighting performance for decades and deliberately chose not to warn end users or purchasers of the potential environmental or human toxicity concerns linked to fluorinated compounds.

140.    Defendants did not warn public entities, firefighter trainees who they knew would foreseeably come into contact with their AFFF products, or firefighters employed by either civilian and/or military employers that use of and/or exposure to Defendants' AFFF products containing PFAS and/or its precursors would pose a danger to human health

**The Leahy Airport Used AFFF as Directed and Without Knowledge of Its Dangers**

141.    For many years, Defendants manufactured, marketed, distributed, and/or sold AFFF and/or its component products and chemical compounds, a firefighting agent intended for use on high intensity or high temperature fires, said products being used generally for decades at the Leahy Airport.

142.    Plaintiff was never informed this product was inherently dangerous. Nor was the Plaintiff warned about the known environmental contamination risks associated with AFFF.

143.    Defendants knew or should have known that airports and military operations at airports were heavy users of AFFF, and as such, with said uses of AFFF resulting in pollution of

environmental media with AFFFs and the component compounds, chemicals, and toxins of AFFFs.  Plaintiff seeks monetary damages under various causes of action against Defendants.

144.    The use of AFFF products during the normal operating course of any airport, including the Leahy Airport, was not limited to fighting fires, as systems were required to be examined, flushed, refilled, and/or maintained on a regular basis, thereby increasing the bioavailability and ecological fate and transport of the AFFFs, their component chemical molecules, and their breakdown chemicals.

145.    AFFF can be made without PFAS.  Fluorine-free foams do not release PFAS into the environment.  Despite knowledge of this fact, as well as knowledge of the toxic nature of AFFF made with PFAS, Defendants continued to manufacture, distribute and/or sell AFFF with PFAS, which led to the ongoing contamination and damages to the Leahy Airport property.

146.    Defendants were and/or should have been aware, knew and/or should have known, and/or foresaw or should have foreseen that their design, marketing, development, manufacture, distribution, release, training and response of users, production of instructional materials, sale and/or other handling and/or use of AFFF containing PFAS would result in the contamination of the property of Plaintiff with PFAS, and the biopersistence and bioaccumulation of such PFAS in property.

147.    Defendants were and /or should have been aware, or knew and/or should have known, and/or foresaw or should have foreseen that allowing PFAS to contaminate the property of Plaintiff would cause injury and irreparable harm.

148.    Defendants did not seek or obtain permission or consent from Plaintiff before engaging in such acts and/or omissions that caused, allowed, and/or otherwise resulted in

Plaintiff's property contamination to AFFF, and resulting biopersistence and bioaccumulation of such PFAS on Plaintiff's property.

149.    At all times pertinent herein beginning decades ago and continuing to this date, AFFF containing PFAS has been used and stored at the Leahy Airport for fire protection, training, and response activities.

150.    The Plaintiff utilized the product as intended and directed and maintained appropriate safeguards as to their personnel while treating any emergency at the Leahy Airport, participating in any training or performing any FAA Part 139 testing at the Leahy Airport.

151.    Defendants' AFFF containing PFAS has been used for its intended purpose, with appropriate known safeguards, in the process of fire protection, training, and response activities at the Leahy Airport for many years.  As a result, AFFF products were discharged into imperious and pervious surfaces, floor drains and washed into sediments, soils and waters, harming the environment and endangering human health.

152.    During these activities, AFFF was used as directed and intended by Defendants, with all known safeguards, which allowed PFAS to enter the environment and into and onto the Leahy Airport property where these compounds migrated to surface water and through the subsurface into the groundwater, thereby contaminating the surface, soil, sediment as well as surface and groundwater, thus causing other extensive and ongoing damages at the Leahy Airport.  When sprayed onto outdoor surfaces as intended, these compounds migrated to surface water and through the soil and into the groundwater, thereby contaminating the Leahy Airport.

153.    When used as the Defendants intended and directed, the AFFF sold to and utilized at the Leahy Airport released PFAS into the environment.

154.     There are multiple areas on the Leahy Airport, including land, water, and structures, that have been contaminated with PFAS through the use of AFFF.  Due to the chemicals' persistent nature, among other things, these chemicals have, and continue to, cause injury and damage to the Leahy Airport property.

155.     It is probable that more widespread contamination has occurred.  Given the extensive use of the fluorinated AFFF by military and civilian firefighters, upon information and belief, additional municipal owned property is also contaminated with these toxic compounds. The Leahy Airport has been, and continues to be, contaminated by Defendants' PFAS.

156.     At all times pertinent herein, Plaintiff did not know, nor should it have known, of the ongoing contamination of the Leahy Airport via AFFF's PFAS as Defendants did not disclose the toxic nature and harmful effects of the AFFF which Defendants created, designed, manufactured, distributed, and sold with PFAS.

157.     Defendants knew their customers warehoused large stockpiles of AFFF.  In fact, Defendants marketed their AFFF products by touting its shelf-life. Even after Defendants fully understood the toxicity of PFAS, and their impacts to the health of humans following exposure, Defendants concealed the true nature of PFAS. While Defendants phased out production or transitioned to other formulas, they did not instruct their customers that they should not use AFFF that contained PFAS and/or their precursors.  Defendants further did not act to get their harmful products off the market.

158.     Defendants did not properly instruct users, consumers, public officials or those who were in a position to properly guard against the dangers of PFAS how to properly dispose of AFFF or that they needed to properly dispose of their stockpiles of AFFF.

159.    As a direct result of Defendants' acts alleged in this Complaint, the Leahy Airport property has been contaminated and will continue to be contaminated with PFAS, creating an environmental and public health hazard, unless such contamination is remediated.  Regardless, as a direct and proximate result, Plaintiff must assess, evaluate, investigate, monitor, remove, clean up, correct and remediate PFAS contamination on the Leahy Airport property at significant expense, loss and damage.

160.    Because the Defendants knowingly placed defective and dangerously toxic fluorinated AFFF foams into the stream of commerce they are strictly liable to the Plaintiff for causing the release of toxic PFAS compounds onto the City's municipal lands and its surface and subsurface soil.  Defendants did not act to remove AFFF from the stream of commerce.

161.    Because Defendants negligently caused release of toxic PFAS compounds onto the City's lands and its surface and subsurface soil, they are jointly and severally liable.

162.    Plaintiff seeks to recover compensatory and/or consequential damages for all past and future costs to investigate, remediate, remove, dispose of, and monitor PFAS contamination on the Leahy Airport, surface and groundwater caused by the use of Defendants' AFFF containing PFAS on the Leahy Airport property, as well as reasonable attorney's fees as this suit was brought in the public interest.

163.    Plaintiff seeks damages and restitution for diminution of value of Leahy Airport.

## AFFECTED NATURAL RESOURCES

164.    PFAS have characteristics that have resulted in their extensive and persistent contamination of the City's municipal property.  PFAS – including PFOA and PFOS – can persist in an environment indefinitely due to their multiple fluorine-carbon bonds, which are exceptionally strong and stable. These bonds are resistant to metabolic and environmental

degradation processes.  PFAS are toxic. These compounds can cause adverse impacts to not only the environment, but also to animal and human health.

165.    PFOS and PFOA attributable to AFFF have contaminated the City's municipal real property, sediment, surface and subsurface soil, biota, drinking water, and other natural resources at municipal sites and facilities where AFFF was transported, stored, used, handled, released, spilled, or disposed of for decades. Further AFFF-related contamination of the City's economic natural resources will be uncovered as investigation continues.

166.    These contaminated lands and natural resources have inherent value for the City and its residents.  Sediments and soils are a critical component of the City's ecological resources.

167.    Sediments and soils can sustain a wide diversity of plants and animals that are essential to a healthy ecosystem. They provide a living substrate for submerged and emerged flora and support diverse invertebrate species, wading birds, fish, and shellfish populations.

168.    Sediments and soils serve as a long-term reservoir where PFAS are stored and released over time, impacting biota and increasing PFAS concentrations in fish tissue and wildlife.  Investigations of AFFF contamination in sediments and soils in the City is ongoing.

169.    Biota, including the flora and fauna, are critical ecological resources. The City's biodiversity provides a wealth of ecological, social and economic goods and services are an integral part of the ecological infrastructure for cultural and economic activity in Burlington.

170.    Contamination from the discharge of hazardous substances and pollutants is one of the major causes of biodiversity loss.

171.    Natural resource injuries to biota in the City negatively impact not only the individual species directly involved, but the capacity of the injured ecosystems to regenerate and sustain such life into the future.

172.     Investigation of AFFF contamination in Plaintiff's water supply is ongoing.

## COUNT I- NEGLIGENCE

173.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

174.     As commercial distributors, sellers, manufacturers, suppliers, marketers and/or designers of fluorinated AFFF, Defendants owed a duty of care to Plaintiff not to place into the stream of commerce a defective product that was in a defective condition and unreasonable dangerous to purchasers, end users and the City's economic and environmental resources.

175.     Defendants breached their duty by negligently designing, formulating, manufacturing, distributing, selling, supplying and/or marketing such an unreasonably dangerous product into the stream of commerce, including for use by municipal, county or state fire authorities, even when they knew or should have known of the dangers PFAS posed to the City's economic and environmental resources.

176.     Among other things, Defendants breached their duty when they manufactured, marketed, distributed, supplied, and sold fluorinated AFFF even though they knew or should have known the dangers that PFAS posed to natural resources.  Defendants should have known that the manner in which they were manufacturing, marketing and selling AFFF containing PFAS compounds would result, and as a matter of both proximate cause and cause in fact did result, in the contamination of the City's municipal property, including the Leahy Airport.

177.     Defendants knew or should have known that exposure to PFAS is hazardous to the environment and to human and animal health.

178.    As a direct and proximate result of Defendant's acts or omissions, Plaintiff has incurred, is incurring, and will continue to incur substantial economic damages related to the release of fluorinated PFAS containing AFFF in amounts to be provided at trial.

179.    Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of the City's municipal property, including the Leahy Airport.  Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice.  Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare.  Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

180.    Defendants are jointly and severally liable for all such damages, and plaintiff is entitled to recover all such damages and other relief as set forth below.

181.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT II – PUBLIC NUISANCE

182.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

183.    Because Plaintiff is a public entity, municipal lands and natural resources are public and commonly held resources for the benefit of its citizens.  Members of the public have a right to have their lands natural resources free of Defendant's toxic contamination.

184.    Defendants' acts and omissions, including their manufacture, sale, supply, marketing, and defective design of, and/or failure to warn regarding PFAS in fluorinated AFFF products constitutes a serious and ongoing hazard to public health.

185.    Consequently, Defendants substantially interfered with and caused damages to public or common resources that endanger municipal property, as well as the health, safety, and welfare of its citizens.  Such action creates, contributes to, or maintains a public nuisance.

186.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of the Plaintiff's municipal property.  Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud and/or malice.  Such conduct was performed to promote sales of fluorinated AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare.  Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

187.    Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

188.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT III – PRIVATE NUISANCE

189.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

190.    Plaintiff is the owner of the Patrick Leahy Burlington International Airport, as well as facilities and natural resources that are vital to the City's public safety, tourism, recreation, and economic activities.

191.    Defendants' intentional, negligent and/or reckless conduct has resulted in substantial and unreasonable interference with the City's use and enjoyment of land, toxic PFAS contamination in the City of Burlington and other municipal lands or facilities, including the Leahy Airport, causing injuries to the City's economic, environmental and ecological interest.

192.    Defendants' manufacture, distribution, sale, supply, and marketing of fluorinated PFAS containing AFFF was unreasonable because Defendants had knowledge of PFAS unique and dangerous chemical properties and knew that contamination of municipal lands and natural resources was substantially certain to occur, but failed to provide adequate warning of, or take any precautionary measures to mitigate, those hazards.

193.    The toxic PFAS contamination of the City's municipal property, including the Leahy Airport, caused, contributed to and/or maintained by Defendants substantially and unreasonably interferes with Plaintiff's property rights and with the use and enjoyment of economic and natural resources.

194.    Each Defendant has caused, contributed to, and/or maintained such nuisance, and is a substantial contributor to such nuisance.

195.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur economic damages related to toxic PFAS contamination of the City of Burlington and municipal facilities, including the Leahy Airport, in an amount to be proven at trial.

196.     Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of the City's municipal property, including the Leahy Airport.  Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice.  Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare.  Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

197.     Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

198.     Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT IV – TRESPASS

199.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

200.     Plaintiff is the owner of the Patrick Leahy Burlington International Airport, as well as facilities and natural resources that are vital to the City's public safety, tourism, recreation, and economic activities.

201.     Plaintiff did not give any Defendant permission to cause PFAS to enter onto the City's municipal property.

202.     Defendants knew or should have known that:

a.   PFAS have a propensity to infiltrate soils, sediments biota and other vital natural resources when released into the environment;

42

b. PFAS are mobile and persistent compounds capable of moving substantial distances through aquifers, soil and sediments;

c. PFAS compounds are toxic to human and animal health; and

d. PFAS compounds are therefore hazardous to public health and welfare and likely to cause ecological and economic injuries when released into the environment.

203. Defendants manufactured, promoted, marketed, distributed, and/or sold AFFF containing PFAS, which Defendants knew or reasonably should have known would certainly be discharged and release toxic PFAS into the ground and intrude upon, contaminate, and damage the City's property rights and possessory interest.

204. Defendants' willful and intentional conduct directly resulted in the placement of its product, AFFF, on and in municipal property owned by the City, including the Leahy Airport, without permission or right of entry.

205. Each Defendant is a substantial factor in bringing about the contamination of the City's real property, including the Leahy Airport, and each Defendant aided and abetted the trespasses and is jointly and severally liable for the injuries and damages caused to the Plaintiff.

206. As a direct and proximate result of Defendant's acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur economic damages related to toxic PFAS contamination of the City of Burlington and municipal facilities, including the Leahy Airport, in an amount to be proven at trial.

207. Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of the City's municipal property, including the Leahy Airport. Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct was

performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare.  Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

208.    Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

209.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT V – DEFECTIVE DESIGN

210.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

211.    Defendant's AFFF was defective in design or formulation in a manner that rendered the products unreasonably dangerous to purchasers and end users of AFFF, and were defective and dangerous at the time Defendants parted possession with the AFFF.

212.    As commercial designers, manufactures, distributors, suppliers, sellers and or marketers of AFFF containing PFAS, Defendants has a strict duty not to place into the stream of commerce a product that is defective or unreasonably dangerous.

213.    Defendants knew that third parties would purchase AFFF containing PFAS and use it without inspection for defects.

214.    At the time of manufacture, Defendants knew that the chosen formulation of AFFF was not biodegradable and bioaccumulated in property, fish, wildlife, and humans.

215. AFFF containing PFAS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties were applied, discharged, disposed of, or otherwise released onto the City's municipal lands at various locations over time and in various amounts.

216. The AFFF containing PFAS purchased by third parties was used in a foreseeable manner and without substantial change in the condition of such products.

217. Defendants knew, or reasonably should have known, that the use of AFFF containing PFAS in its intended manner would foreseeably result in the spillage, discharge, disposal, or release of AFFF onto City property, including the Leahy Airport.

218. The AFFF containing PFAS released onto the Plaintiff's property was defective in design and unreasonably dangerous because, among other things:

    a. PFAS have a propensity to infiltrate soils, sediments biota and other vital natural resources when released into the environment;

    b. PFAS are mobile and persistent compounds capable of moving substantial distances through aquifers, soil and sediments;

    c. PFAS compounds are toxic to human and animal health; and

    d. PFAS compounds are therefore hazardous to public health and welfare and likely to cause ecological and economic injuries when released into the environment.

219. Defendants manufactured, promoted, marketed, distributed, and/or sold AFFF containing PFAS, which Defendants knew or reasonably should have known would certainly be discharged and release toxic PFAS into the ground and intrude upon, contaminate, and damage the City's property rights and possessory interest.

220. Defendants' willful conduct directly resulted in the placement of its product, AFFF, on and in municipal property owned by the City, including the Leahy Airport, without permission or right of entry.

221.    Each Defendant is a substantial factor in bringing about the contamination of the City's real property; and each Defendant aided and abetted the trespasses and is jointly and severally liable for the injuries and damages caused to the Plaintiff.

222.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur economic damages related to toxic PFAS contamination of the City of Burlington and municipal facilities, including the Leahy Airport, in an amount to be proven at trial.

223.    Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of the City's municipal property, including the Leahy Airport.  Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice.  Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare.  Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

224.    Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

225.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT VI – STRICT LIABILITY – DEFECTIVE PRODUCT

226.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

227.    Defendant's AFFF was defective in design or formulation in a manner that rendered the products unreasonably dangerous to purchasers and end users of AFFF at the time Defendants parted possession with the AFFF.

228.    As commercial designers, manufactures, distributors, suppliers, sellers and or marketers of AFFF containing PFAS, Defendants have a strict duty not to place into the stream of commerce a product that is defective or unreasonably dangerous.

229.    Defendants knew that third parties would purchase AFFF containing PFAS and use it without inspection for defects.

230.    At the time of manufacture, Defendants knew that the chosen formulation of AFFF was not biodegradable and bioaccumulated in property, fish, wildlife, and humans.

231.    AFFF containing PFAS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties were applied, discharged, disposed of, or otherwise released onto the City's municipal lands, including the Leahy Airport, at various locations over time and in various amounts.

232.    The AFFF containing PFAS purchased by third parties was used in a foreseeable manner and without substantial change in the condition of such products.

233.    Defendants knew, or reasonably should have known, that the use of AFFF containing   PFAS in its intended manner would foreseeably result in the spillage, discharge, disposal, or release of AFFF onto City property, including the Leahy Airport.

234.    The AFFF containing PFAS released onto the Plaintiff's property was defective in design and unreasonably dangerous because, among other things:

     a.   PFAS causes extensive and persistent contamination even when products containing it are used in their foreseeable and intended manner.

     b.   PFAS contamination poses significant threats to public health and welfare.

      c.   Defendants failed to conduct and/or failed to disclose reasonable, appropriate, or adequate scientific studies to evaluate the environmental fate and transport and potential human health effects of PFAS.

235.    At all times relevant to this action, AFFF containing PFAS was dangerous to an extent beyond that which would be contemplated by the ordinary consumer, and/or the foreseeable risk of harm to public health and welfare posed by PFAS outweighed the cost to Defendants of reducing or eliminating such risk.

236.    Defendants knew or should have known about feasible alternatives to producing AFFF without the use of PFAS, and the omission of such alternative designs rendered AFFF not reasonably safe.

237.    As a direct and proximate result of the defects previously described, Plaintiff's property has been, and continues to be, contaminated with PFAS in varying amounts over time, causing Plaintiff significant injury and damage.

238.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur damages related to PFAS contamination of its municipal real property, including the Leahy Airport.

239.    Defendants knew it was substantially certain that their acts or omissions described above would cause injury and damage, including PFAS contamination of the City's municipal property, including the Leahy Airport. Defendants committed each of the above-described acts or omissions knowingly, willfully and with oppression, fraud and/or malice. Such conduct was performed to promote the sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on the public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

240.     Defendants are jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

241.     Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT VII STRICT LIABILITY – FAILURE TO WARN

242.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

243.     As commercial distributors, sellers, manufacturers, suppliers, marketers and/or designers of AFFF, Defendants had a strict duty to warn against latent dangers resulting from foreseeable uses of the product that Defendants knew or should have known about.

244.     At the time of marketing, when the AFFF left control of the Defendants, Defendants knew, or in the exercise of reasonable care, should have known that the AFFF was not biodegradable, and that it bioaccumulated in fish, wildlife and humans, and knew they were providing an inadequate warning or instruction about the inherent danger of allowing the AFFF to be released into the environment.

245.     Defendants knew that third parties would purchase AFFF containing PFAS and expect that it was biodegradable and use it at fire training facilities and during live fire operations where runoff would permeate the City's lands and natural resources, including the Leahy Airport.

246.     AFFF containing PFAS purchased or otherwise acquired (directly or indirectly) from Defendants by third parties was applied, discharged, disposed of, or otherwise released at various locations, at various times, and in various amounts onto the City's land.

247.    The AFFF containing PFAS purchased by third parties was used in a reasonably foreseeable manner and without substantial change in the condition of such products.

248.    Defendants knew or should have known that the use of AFFF containing PFAS in its intended manner would result in the discharge, disposal, or release of PFAS onto the City's land, including the Leahy Airport.

249.    The AFFF containing PFAS used in the vicinity of fire training areas on the City's land, including the Leahy Airport, was defective in design and unreasonably dangerous for the reasons set forth above.

250.    Despite the known and/or reasonably foreseeable hazards to property and human health and welfare associated with the use of AFFF containing PFAS, the Defendants failed to provide adequate warnings of, or take any other precautionary measures to mitigate, those hazards.

251.    In particular, the Defendants failed to describe such hazards or provide any precautionary statements regarding such hazards in the labeling of their AFFF products containing PFAS.

252.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur substantial economic and environmental damages related to PFAS contamination in an amount to be proved at trial.

253.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of Plaintiff's land.

254.    Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice.  Such conduct was performed to promote

sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

255.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

256.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT VIII – BREACH OF EXPRESS AND IMPLIED WARRANTIES

257.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

258.    At all times relevant hereto, the Defendants manufactured, marketed, labeled, and sold the AFFF products that has been previously alleged and described herein.

259.    At the time the Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF products, the Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

260.    The Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe. These warranties were breached, and such breach proximately resulted in the injuries and damages suffered by the Plaintiff.

261.    The Plaintiff is within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

262.    The Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause serious injury, pain, and cancer.

263.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur substantial economic and environmental damages related to PFAS contamination in an amount to be proved at trial.

264.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of Plaintiff's land, including the Leahy Airport.

265.    Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice.  Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare.  Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

266.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

267.    Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## COUNT IX – FRAUDULENT CONCEALMENT

268.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

269.    Throughout the relevant time period, Defendants knew that their products were defective and unreasonably unsafe for their intended purpose.

270.    Defendants fraudulently concealed from and/or failed to disclose to or warn the Plaintiff, and the public that their products were defective, unsafe, and unfit for the purposes intended, and that they were not of merchantable quality.

271.    Defendants were under a duty to the Plaintiff and the public to disclose and warn of the defective and harmful nature of the products because:

    a.    Defendants were in a superior position to know the true quality, safety and efficacy of the Defendants' products;

    b.    Defendants knowingly made false claims about the safety and quality of the Defendants' product in documents and marketing materials; and

    c.    Defendants fraudulently and affirmatively concealed the defective nature of the Defendants' products from the Plaintiff.

272.    The facts concealed and/or not disclosed by Defendants to the Plaintiff were material facts that a reasonable person would have considered to be important in deciding whether or not to purchase and/or use the Defendants' products.

273.    Defendants intentionally concealed and/or failed to disclose the true defective nature of the products so that the Plaintiff would use the Defendants' products, the Plaintiff justifiably acted or relied upon, to Plaintiff's detriment, the concealed and/or non-disclosed facts as evidenced by Plaintiff's use of the Defendants' products.

274.    Defendants, by concealment or other action, intentionally prevented the Plaintiff from acquiring material information regarding the lack of safety and effectiveness of the

Defendants' products and are subject to the same liability to the Plaintiff for Plaintiff's pecuniary losses, as though Defendants had stated the non-existence of such material information regarding the Defendants' products' lack of safety and effectiveness and dangers and defects, and as though Defendants had affirmatively stated the non-existence of such matters that the Plaintiff was thus prevented from discovering the truth. Defendants therefore have liability for fraudulent concealment under all applicable laws, including, inter alia, Restatement (Second) of Torts §550 (1977).

275.    As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur substantial economic and environmental damages related to PFAS contamination in an amount to be proved at trial.

276.    Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFAS contamination of Plaintiff's land.

277.    Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice.  Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

278.    Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below

279.     Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

<u>**COUNT X – WANTONESS / PUNITIVE DAMAGES**</u>

280.     Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated herein.

281.     Defendants and their employees, agents, officers, and representatives owed a duty of care to end users of their AFFF products, including Plaintiff.

282.     Defendants breached the duty of care owed to the Plaintiff.

283.     The actions of Defendants and their employees, agents, officers, and representatives were willful and wanton and exhibited a reckless disregard for the property and safety of the end users of Defendants' AFFF products, including Plaintiff.

284.     As a proximate and foreseeable consequent of the actions of Defendants, Plaintiff's property was contaminated by an unreasonably dangerous toxic PFAS containing AFFF, which caused Plaintiff's property injury.

285.     As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has incurred, is incurring, and will continue to incur substantial economic and environmental damages related to PFAS contamination in an amount to be proved at trial.

286.     Defendants knew it was substantially certain their acts and omissions described above would cause injury and damage, including PFAS contamination of Plaintiff's land.

287.     Defendants committed each of the above-described acts and omission knowingly, willfully, and with oppression, fraud, and/or malice.  Such conduct was performed to promote sales of AFFF, in conscious disregard to the probable dangerous consequences of that conduct

and its reasonably foreseeable impacts on public health and welfare. Therefore, Plaintiff requests an award of punitive damages in an amount sufficient to punish these Defendants and that fairly reflects the aggravating circumstances alleged herein.

288.     Defendants are strictly, jointly and severally liable for all such damages, and Plaintiff is entitled to recover all such damages and other relief as set forth below.

289.     Plaintiff prays for a judgment against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit.

## TOLLING OF THE STATUTE OF LIMITATIONS
### Discovery Rule Tolling

290.     Plaintiff had no way of knowing about the risk of property damage associated with the use of and exposure to AFFF until very recently.

291.     Within the time period of any applicable statute of limitations, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF is harmful to property and can cause widespread contamination.

292.     Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with use of and exposure to AFFF; nor would a reasonable and diligent investigation by Plaintiff have disclosed that AFFF could cause property damage.

293.     For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### Fraudulent Concealment Tolling

294.     All applicable statute of limitations have also been tolled by Defendants knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

295.    Instead of disclosing critical information regarding AFFF, Defendants have consistently and falsely represented that their AFFF products do not contaminate the environment.

296.    This fraudulent concealment continues through present day.

297.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

298.    Defendants were under a continuous duty to consumer, end users, and other persons coming into contact with their products, including Plaintiff, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to AFFF.

299.    Instead, Defendants knowingly, affirmatively, and actively concealed information concerning AFFF and the serious risks associated with the use of AFFF.

300.    Based on the foregoing, Defendants are estopped from relying on any statute of limitations in defense of this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against all Defendants, jointly and severally, on each of the above-referenced claims and Causes of Action as follows:

1.    Awarding compensatory damages to Plaintiff for past and future damages, including but not limited to:

(a) costs and expenses related to past, present and future investigation, sampling, testing and assessment of the extent of PFAS contamination on and within the Leahy Airport property;

(b) costs and expenses related to past, present and future treatment and remediation expenses for PFAS contamination at the Leahy Airport property or, in the alternative, the costs and expenses associated with and related to the removal and disposal of the contamination and

(c) costs and expenses related to the past, present and future installation and maintenance of monitoring mechanisms to assess and evaluate PFAS on and within the Leahy Airport property, or to mitigate further impact;

2.    Consequential damages, including costs and expenses related to replacing Plaintiff's contaminated firefighting equipment;

3.    A determination that this suit was brought in the public interest;

4.    Plaintiff's attorneys' fees;

5.    Costs and disbursements of this lawsuit;

6.    Pre-judgment and post-judgment interest;

7.    Punitive and/or exemplary damages for the wanton, willful, fraudulent, and/or reckless acts of the Defendants who demonstrated a complete disregard and reckless indifference for the property rights of the Plaintiff and of the general public and to the Plaintiff in an amount sufficient to punish Defendants and deter future similar conduct;

8.    Such other and further relief as the Court deems just, proper and equitable.

## **JURY DEMAND**

The Plaintiff hereby demands a trial by jury.

Dated: September 19, 2025                    Respectfully Submitted,

*/s/ T. Roe Frazer II*
T. Roe Frazer II
Thomas R. Frazer III
J. Grant LaBar
John Michael Allen
Jacob A. Schmidt
R. Prescott Sifton, Jr.
**Frazer PLC**
30 Burton Hills Boulevard, Suite 450
Nashville, TN 37215
Tel: (615) 647-6464
Fax:  (615) 307-4902
Roe@frazer.law
Trey@frazer.law
Grant@frazer.law
Mac@frazer.law
Jacob@frazer.law
Scott@frazer.law

**LYNN, LYNN, BLACKMAN & TOOHEY, P.C.**
Pietro J. Lynn, Esq.
76 St. Paul Street, Suite 400
Burlington, VT 05401
(802)860-1500 – Telephone
plynn@lynnlawvt.com

*Attorneys for Plaintiffs*